**SO ORDERED.**

**SIGNED this 16 day of November, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ALLEN DALE SISLER,                                CASE NO. 11-00787-8-JRL
                                                  CHAPTER 13
    DEBTOR.

_____

### ORDER

This matter came before the court on Allen Dale Sisler's ("debtor") objection to claim, John Gore and Wilbur McLamb's (collectively "creditors") objection to confirmation of the plan and exemptions, and creditors' motion to dismiss or convert debtor's case to chapter 7. A hearing was held on September 15, 2011 in Raleigh, North Carolina.

### FACTS

The debtor filed for relief under chapter 13 of the Bankruptcy Code on February 3, 2011. His plan has not yet been confirmed. On or about June 9, 2011, the creditors filed a proof of claim in the unsecured amount of $449,346.20. On June 18, 2011, The debtor filed an objection to this claim. On July 14, 2011, the creditors filed an objection to confirmation of the plan alleging it is deficient, inconsistent, contradictory, and in overall disregard of the creditors.

During the year 2008, the debtor borrowed funds from the creditors on behalf of Prudential Investors, L.L.C. d/b/a Camelot 1 Homes ("Prudential"). At this time, the debtor was half owner of Prudential, which was in the business of purchasing and selling modular homes. The money lent to Prudential was used to purchase or construct the modular homes, which would then be sold to third parties. Once payment was made by the buyer, the proceeds would be used to pay Prudential's revolving line of credit with the creditors. Any surplus from the proceeds would go to Prudential.

On or about September 29, 2008, Prudential executed three promissory notes made payable to the creditors. The amounts of the notes were $250,000.00, $100,000.00, and $100,000.00. A commercial guaranty and deeds of trust were executed in conjunction with the $250,000.00 note. The commercial guaranty defined the "guarantor" as Allen Sisler. The document bears signatures of the debtor and his spouse, Sharon D. Sisler, under the word "Guarantor." Each of the $100,000.00 notes included an addendum entitled, "Summary of Loan Terms"("addendum" or "addenda"). The words "personal guaranty" were included underneath each signature line. The addenda do not include any information about the terms of the personal guaranty. Both were signed by the debtor and Cynthia Carswell, who was also a half owner of Prudential.

## ARGUMENT

The debtor's argument involves two primary contentions: (1) the $250,000.00 note is not a joint debt and the two signatures on the commercial guaranty do not create joint liability; and (2) the creditors' claim of $449, 346.20 is overstated. The debtor contends that if any amount is owed, it is only the $250,000.00 note. Further, the $250,000.00 is not a joint debt, but an individual one. Conversely, the creditors argue that the $250,000.00 loan is a valid and enforceable joint debt as it

2

is signed by the debtor and his spouse.  The creditors contend that the debtor must account for the value of their marital property in his Chapter 13 plan payments.  Additionally, the creditors indicate that this claim for $449,346.20 is not overstated, but is the amount due as of the filing of the debtor's bankruptcy petition.

## ANALYSIS

### I. Debtor's Objection To Claim

A. NO JOINT LIABILITY

The debtor first argues the commercial guaranty for the $250,000.00 loan, which bears his non-filing spouse's signature, was not actually signed by her.  The creditors carry the burden of establishing, by a preponderance of evidence, that the purported guarantor signed the guaranty agreement.  Carolina Mills Lumber Co., Inc. v. Huffman, 386 S.E.2d 437, 438 (1989).  During the hearing, the debtor admitted to forging his spouse's name on the commercial guaranty.  According to the debtor, his spouse knew nothing of the loan and would not have agreed to sign the document.  Allegedly, Attorney Sperry, who provided legal services to both creditors and debtor, notarized the document when the debtor's spouse was not present.  It appears that Ms. Sisler was in Raleigh at the time the document was signed in Gastonia.  Finally, the commercial guaranty defines only Mr. Sisler as the guarantor.

In order for the creditors to meet their burden of proof, they must: (1) produce evidence satisfactory to persuade the court of the particular fact in issue; and (2) persuade the court that alleged fact is true.  Id.  The creditors failed to present evidence showing by a preponderance of evidence that the debtor's spouse actually signed the commercial guaranty.  Additionally, it is customary to look to the defined terms in a contract when inconsistency exists.  In this case, the

commercial guaranty defines the term, "guarantor," only as "Allen Sisler."  Based on the evidence presented, the guaranty liability for the $250,000.00 note is not held jointly by the debtor and his spouse.

B.  LIABILITY ON $100,000.00 NOTES

The issue with the two $100,000.00 notes is whether the loan addenda containing the words "personal guaranty" are sufficient to satisfy the writing requirement of the statute of frauds.  Under North Carolina law, contracts personally charging promisors for the debt of another are required to be in writing and signed by the party charged. N.C. Gen. Stat. § 22-1 (2011).  "In order to hold a guarantor liable under a guaranty agreement, plaintiff must first establish the existence of the agreement." Carolina Mills Lumber Co., 386 S.E.2d at 438. In Marvel Lamp Co. v. Capel, the North Carolina Court of Appeals held, "[T]he contents of the letter in question were too vague, indefinite, and uncertain to give rise to an action for breach of contract." Marvel Lamp Co. v. Capel, 45 N.C. App. 105, 108 (1980).  In that case, the corporate president wrote a letter to creditors' agent stating that the corporation was no longer in business. Id. at 105.  He further indicated that he was not personally liable but would try to pay off the debt himself. Id.  The North Carolina Court of Appeals affirmed the trial court's ruling finding the letter insufficient to constitute a definite promise. Id. at 108.  The letter failed to establish the amount the defendant was to pay, the payment date, or the event determining when payment was due. Id. at 107.  Like Capel, the documents in this case leave undetermined the requisite details to satisfy the "writing" required by the Statute of Frauds.  The argument posed by the creditors' counsel that "personal guaranty" is ambiguous and thus the court must look to the intent of the parties is unpersuasive.  The court does not question the clarity of the words "personal guaranty" but rather the existence of an actual written agreement.  Therefore, the

4

creditors' claim is limited to the amount due under the $250,000.00 note.

## II. Creditors' Objection to Plan Confirmation and Motion to Dismiss or Convert

The creditors move for dismissal of the case or conversion to chapter 7 on the grounds that the debtor has acted in bad faith. This motion will be resolved after the Bankruptcy Administrator completes her investigation and informs the court of her position in this matter.

## CONCLUSION

Based on the foregoing, the court finds the commercial guaranty is not the joint liability of the debtor and his spouse. The court also finds the purported personal guarantees for the two $100,000.00 notes are insufficient to constitute a writing; therefore, the debtor is not personally liable as to the $100,000.00 notes. The creditors' objection to confirmation on the grounds that the debtor exceeds the debt limit and does not meet the liquidation test is **OVERRULED**, and the debtor's objection to claim on these grounds is **ALLOWED**. The issue of whether the debtor has filed this case in good faith will be resolved on the pending motion to dismiss or convert in a subsequent order.

**END OF DOCUMENT**